# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINIOS
# EASTERN DIVISION

| | |
|---|---|
| MARIA CARDENAS, EVANIHDO CARDENAS and NATALIA BARRON, | )<br>)<br>) |
| Plaintiffs, | ) No. 08 C 3174<br>) |
| v. | )<br>) Honorable Charles R. Norgle |
| CITY OF CHICAGO, a Municipal Corporation, Chicago Police Officer A. GALLEGOS, | )<br>)<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Defendants A. Gallegos ("Gallegos") and City of Chicago's (the "City") joint motion to dismiss Plaintiffs' complaint pursuant to FED. R. CIV. P. 12(b)(5), for insufficient service of process, and FED. R. CIV. P. 12(b)(6), for failure to state a claim. The outcome of Defendants' 12(b)(6) motion necessarily relies on whether Plaintiffs properly served Officer Gallegos. For the following reasons, the Court finds that they did not, thus both motions are granted.

## I. BACKGROUND

The following facts are taken from Plaintiffs' complaint. On December 12, 2007 Defendant A. Gallegos ("Gallegos"), a Chicago Police Officer, obtained a search warrant for a first floor apartment located within a multistory apartment building at 1627 W. 21st Street, Chicago, Illinois. The warrant authorized the officers to search for a 5'7" hispanic individual named "Oscar." The warrant also authorized the officers to seize cocaine, money and other paraphernalia. Two days later, on December 14, 2007, Gallegos and other unknown officers

entered the premises at 1627 W. 21st Street without knocking or announcing their presence. After entering the unit, the officers handcuffed the occupants and searched the residence, but found neither drugs nor "Oscar."

Plaintiffs initiated this case against Gallegos and the City of Chicago (the "City") on April 22, 2008 in the Circuit Court of Cook County. The complaint consists of five counts, including three state-law claims and two federal claims based on the alleged unlawful search. On June 2, 2008 the Defendants removed the case to this Court and, eventually, moved to dismiss Plaintiffs' complaint pursuant to FED. R. CIV. P. 12(b)(5) and 12(b)(6). The motion is fully briefed and before the Court. Defendants' primary argument is that Plaintiffs failed to make a reasonable effort to serve Defendant Gallegos within the requisite 120-day time frame, and thus the complaint must be dismissed for insufficient service of process. Plaintiffs disagree. To decide the issue, the Court turns to Plaintiffs' counsel's ("Counsel") efforts to serve Officer Gallegos.

On May 9, 2008 Counsel served the City with a summons and complaint at the Office of the City Clerk. The same day, Counsel attempted to serve Gallegos at the Chicago Police Department Headquarters, but delivered the summons and complaint to the Superintendent's Office. The Superintendent's Office would not accept service on Gallegos' behalf. On June 10, 2008, a few days after Defendants removed the case to this Court, Counsel placed a phone call to the Chicago Police Department. An unidentified speaker allegedly told Counsel that "the common place" to serve police officers was at the Chicago Police Department Headquarters. Pl.'s Resp. ¶ 24. Counsel did not submit an affidavit or declaration regarding this phone call, but maintains that "this was the same location where service of process was refused" for Gallegos. Counsel further admits that he delivered the summons and complaint "care of the

2

Superintendent's Office," and it is clear that Counsel did not ask the unidentified speaker to clarify the proper department with which to file the summons and complaint. Id.

Counsel did not raise the issue of service again until November 12, 2008. In a letter to the City, Counsel informed the City that the Superintendent's Office refused service for Gallegos and requested that the City waive service on Gallegos' behalf. In response, on December 17, 2008 the City telephoned Counsel and explained that it had no authority to waive service for Gallegos and that the proper place to serve Gallegos was the Chicago Police Department Headquarters, Office of Legal Affairs, not the Superintendent's Office. Beyond that, the parties disagree as to the representations that the City made during this telephone conversation. Counsel says that the City told him "not to worry about effectuating service of" Gallegos, and led him to believe that service was not necessary because the case would settle. Id. ¶ 53. The City denies that it made these representations. Either way, there is no dispute that despite having knowledge of the proper place to serve Gallegos, Counsel took no further action with regard to service for almost a year.

On September 28, 2009 the City filed an appearance on behalf of Gallegos and, concurrently, filed the instant motion. On October 14, 2009 an alias summons was issued as to Gallegos, but according to Counsel the sheriff never served it. Then, on November 9, 2009 Counsel served Gallegos at the Chicago Police Department Headquarters, Office of Legal Affairs. Approximately one year had passed before Counsel effected service on Gallegos.

## II. DISCUSSION

### A. STANDARD OF DECISION

Rule 4(m) provides that service of process shall be "made upon a defendant within 120 days after the filing of the complaint." FED. R. CIV. P. 4(m). A motion to dismiss pursuant to

3

Rule 12(b)(5) asks the Court to determine whether service of process on the defendant was sufficient. See FED. R. CIV. P. 12(b)(5). "When the sufficiency of service is challenged, plaintiff bears the burden of making a prima facie showing that service was properly effected and that personal jurisdiction exists." Trotter v. Oppenheimer & Co. Inc., No. 96 C 1238, 1997 WL 102531, at *2 (N.D. Ill. Mar. 4, 1997). Thus, where there has been insufficient service of process, the Court does not have personal jurisdiction over the defendant. Rabiolo v. Weinstein, 357 F.3d 167, 168 (7th Cir. 1966). Under this construct, motions pursuant to Rule 12(b)(5) and 12(b)(2) (for lack of personal jurisdiction) are interrelated and the standards for both motions are the same.

In determining whether Plaintiff has properly served Defendant, the Court views the facts in a light most favorable to the non-moving party. RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1271, 1275 (7th Cir. 1997). The Court may consider affidavits and other documentary evidence, though the ultimate burden of demonstrating that Plaintiff properly served Defendant rests with Plaintiff. Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782-83 (7th Cir. 2003). The Court can extend the time for service if the plaintiff shows good cause for failing to effect timely service. Panaras v. Liquid Carbonic Indus. Corp., 94 F.3d 338, 340 (7th Cir. 1993).

For a plaintiff to show good cause, it must demonstrate that it conducted "reasonable diligence" in attempting service. Bachenski v. Malnati, 11 F.3d 1371, 1376-77 (7th Cir. 1993). Good cause typically means a valid reason for delay, such as a defendant who evades service. Coleman v. Milwaukee Bd. of Sch. Dirs., 290 F.3d 932, 934 (7th Cir. 2002). If good cause doesn't exist, courts may in their discretion either dismiss the action or direct that service be effected within a specified time. Panaras, 94 F.3d at 340. Thus, "absent a showing of good cause, a district court must still consider whether a permissive extension of time is warranted."

4

Id. at 341 (citing Espinoza v. United States, 52 F.3d 838, 841 (10th Cir. 1995)). When exercising its discretion as to whether an extension is warranted, a district court may consider if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service. FED. R. CIV. P. 4(m), advisory committee's note (1993).

## B. MOTION TO DISMISS – RULE 12(b)(5)

At the outset, the parties do not dispute that the 120-day period for Counsel to properly serve Gallegos began to run on June 2, 2008, the date Defendants removed the case to this Court. Counsel concedes that it didn't properly serve Gallegos until November 9, 2009. Thus the issue for this Court to decide is whether Counsel has satisfied its burden to show that good cause exists for the delay, or that a significant extension by this Court is warranted.

Counsel provides the Court with several reasons, or excuses rather, as to why it didn't serve Gallegos. The Court shall address them in turn. First, in various sections of its response brief, Counsel blames the City for its failure to serve Gallegos. For example, in one paragraph Counsel alleges, without support, that the City "has been holding out the Chicago Police Department headquarters as an agent worthy of accepting service for" Gallegos, which apparently confused Counsel, an experienced litigator. Pl.'s Resp. ¶ 37. This argument borders on nonsensical. The Chicago Police Department is, in fact, the proper place to serve Gallegos, so long as the party attempting service delivers the summons and complaint to the Department's Office of Legal Affairs. The City provided this information to Counsel during the parties' telephone call on December 17, 2008. Despite this disclosure, Counsel did nothing for almost a year.

5

In another paragraph Counsel asserts that the City "refused to give Plaintiff's counsel [Gallegos' personal address], nor would [the City] give Plaintiff's counsel any idea on how they could properly serve" Gallegos. Id. ¶ 46. Counsel's argument in this instance carries little weight, since the burden at all times rests with Counsel to demonstrate that it made a reasonable effort to effect service on Gallegos. The City does not have an affirmative duty to assist Counsel in this endeavor. There is nothing to show that the City was somehow trying to mislead Counsel, or that the City was assisting Gallegos in an attempt to evade service. Indeed just the opposite is true. The City explained to Counsel that it had no authority to accept service on behalf of Gallegos, and furthermore that it was not authorized, understandably, to disclose Gallegos' address to outside parties. There was nothing nefarious about the City's conduct, as Counsel suggests.

Second, as to Counsel's efforts to serve Gallegos, Counsel says that it attempted to serve Gallegos at the Chicago Police Department, contacted the Police Department to determine how to serve one of its officers, attempted to obtain Gallegos' address from the City and attempted to have the City waive service. These efforts remain uncontested, and likely would have been sufficient to support an extension if Counsel had not waited almost a year to serve Gallegos. Counsel's final attempt to satisfy the service requirement took place on December 17, 2008, when the City informed Counsel of the proper method to serve Gallegos. Then, Counsel did nothing until November 9, 2009, after the City appeared on behalf of Gallegos and moved to dismiss the case for improper service. In this instance, Counsel has only itself to blame for failing to serve Gallegos between December 17, 2008 and November 9, 2009. Counsel's efforts prior to this time period are inconsequential.

Third, in another attempt to blame the City for its shortcomings, Counsel argues that the City assured Counsel not to worry about serving Gallegos because it was likely that the parties would settle the case. But this does not indicate good cause for Counsel's delay. Similar arguments have been tried and rejected. See Geiger v. Allen, 850 F.2d 330, 333 (7th Cir. 1988) (holding that the co-defendant's dilatory conduct did not excuse plaintiff's delay); Serlin v. Arthur Anderson & Co., 145 F.R.D. 494, 497 (N.D. Ill. 1993) ("Likewise, in the present case, the plaintiff cannot shift the blame to the defendants for his failure to obtain information necessary to serve the defendants."). The Court finds no reason to stray from these decisions, thus allowing Counsel to shift the blame to the City for its failure to serve Gallegos within a reasonable time after learning how to do so.

Fourth, Counsel makes much of the fact that Gallegos had "actual notice of the lawsuit, as is evident by [the City's] representation [of him] thus far." Pl.'s Resp. ¶ 60. The Court, however, remains unconvinced that this weighs in Counsel's favor, as it is well-established that notice of either the suit or the proceedings by a party that has not been served does not cure the defective service. Chico v. Miller, No. 05 C 3101, 2005 WL 2664586, at *5 (N.D. Ill. Oct. 19, 2005) ("[A]ctual notice of a lawsuit alone is not an acceptable substitute for properly effected service.") (citing Robinson Eng'g Co. Pension Plan & Trust v. George, 223 F.3d 445, 453 (7th Cir. 2000)); Dunmars v. City of Chi., 22 F. Supp. 2d 777, 781 (N.D. Ill. 1998) (granting Rule 12(b)(5) motion despite defendant's notice of the proceedings). Without anything more, this argument is unavailing. This Court has long recognized that "[c]ounsel's lack of diligence, inadvertence or negligence and half-hearted efforts to serve a defendant do not support a finding of good cause." Serlin, 145 F.R.D. at 497 (citing Geiger, 850 F.2d at 333). The same holds true in this case.

In light of the above findings, the Court concludes that Counsel failed to show good cause for its failure to comply with the 120-day time frame. The Court still must consider, however, whether it is appropriate to extend the period for service. Panaras, 94 F.3d at 341. In doing so, the first factor to consider is whether the applicable statute of limitations will bar the Plaintiffs from relitigating their claims against Gallegos. There is no dispute that it will. Plaintiffs' state-law claims expired on December 14, 2008, thus any refilling of this action would be futile. But this, by itself, does not merit an extension. See Brooks v. Union Pac. R.R., No. 05 C 4982, 2006 WL 2853597, at *3 (N.D. Ill. Oct. 2, 2006) (finding unpersuasive the fact that the statute of limitations would bar almost all of plaintiff's claims, given that plaintiffs "shirked their responsibility").

Counsel has had ample time in which to effect service on Gallegos. This case has been pending since April 2008. Counsel was aware that the 120-day time period for service began to run on June 2, 2008. Counsel learned how to properly serve Gallegos on December 17, 2008. From that point, until Defendants moved to dismiss this case, Counsel made no other attempts at service, though it should have been aware that it would face serious consequences if it ultimately failed to serve an essential party. The Court sees no reason to allow Counsel more time to accomplish what it should have done several months ago. Defendants' joint motion is therefore granted. Brock v. Garza, No. 92 C 6678, 1993 WL 462852, at *5 (N.D. Ill. Nov. 9, 1993) (dismissing case pursuant to Rule 12(b)(5) and stating, "[I]t is not the role of this court to constantly overlook or forgive the repeated errors and oversights of counsel.").

## C. MOTION TO DISMISS – RULE 12(b)(6)

In support of its motion to dismiss pursuant to Rule 12(b)(6), the City contends that since Gallegos was not served, any claims based on the theory of respondeat superior must be

dismissed against the City, including Counts I-V of Plaintiffs' complaint. The City further contends that given the expiration of the applicable limitations period on Counts I, III and IV, those claims should also be dismissed as to the City and Gallegos. Plaintiffs offer little in response, except to say that if the Court denies Defendants' motion pursuant to Rule 12(b)(5), then it also must deny the motion pursuant to Rule 12(b)(6). Such an argument, as it were, will not carry the day. Accordingly, the City's motion to dismiss for failure to state a claim is granted. Counts I through V are dismissed with prejudice as to Gallegos. Counts I, III and IV are dismissed with prejudice as to the City and Gallegos.

In closing, the Court shall remind the parties that proper service in every case is not a mere formality. It is a necessary prerequisite that goes to the very foundation of this Court's authority to exercise jurisdiction over a case. Crawford v. Hardee's Restaurants, No. 92 C 2967, 1992 WL 471680, at *1 (N.D. Ill. Dec. 22, 1992). The United States Supreme Court has explained that federal courts may not exercise jurisdiction over a defendant unless the parties have satisfied the procedural requirements of service. Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987). Thus the Court's decision today is not simply a harsh imposition of a technical rule, but a continuous recognition of the Court's "nondelegable duty to police the limits of federal jurisdiction with meticulous care." Market Street Assocs. Ltd. P'ship, 941 F.2d 588, 590 (7th Cir. 1991); see also Am. Gen. Life & Accident Ins. Co., 337 F.3d 888, 892 (7th Cir. 2003).

## III. CONCLUSION

For these reasons, Defendants' motions to dismiss pursuant to Rule 12(b)(5) and Rule 12(b)(6) are granted.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES R. NORGLE, Judge
United States District Court

DATED: February 15, 2010